IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRISTOPHER MICHAEL DARMER, As representative of the Estate of Stephanie Darmer<br><br>Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>Defendant. | § § § § § § § § § § § § § | CIVIL ACTION NO.  4:22-cv-1196 |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1.  Plaintiff Kristopher Michael Darmer, as representative of the Estate of Stephanie Darmer, hereinafter referred to as "Plaintiff," brings this ERISA action against The Lincoln National Life Insurance Company Group Welfare Benefits Plan, in its capacity as Administrator of the Mirand Response Systems, Inc. Long Term Disability Plan, hereinafter referred to as "Defendant".  Stephanie Darmer, hereinafter referred to as "Decedent" passed away on July 14, 2021.  Kristopher Michael Darmer is the husband of Stephanie Darmer and beneficiary under the policy obtained by Stephanie Darmer.  Plaintiff brings this action to secure all benefits, whether they be described as short term, long term,  life insurance benefits, death benefits and/or waiver of premium claims to which Plaintiff was entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff was covered under the policy by virtue of her employment with MIRANDCS, Inc.

## PARTIES

2. Plaintiff was a citizen and resident of Humble, Texas.

3. Defendant is a properly organized business entity doing business in the State of Texas.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the Southern District of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or

where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979). See *Sanders v. State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993). The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant. *Varsic*, 607 F.2d at 248." See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007). Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States. See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994). Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## **CONTRACTUAL AND FIDUCIARY RELATIONSHIP**

8.  At all relevant times, Plaintiff was a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. 000010222633.

9.  Plaintiff obtained the disability policy at issue by virtue of Plaintiff's

employment with MIRANDCS, Inc., with coverage beginning on December 1, 2016

10. Said policy became effective December 1, 2016.

11. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

12. At all relevant times, Defendant was a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. 000010222633 issued by Defendant.

16. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## **STANDARD OF REVIEW**

19. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan

20. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

21. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins.*

5

*Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii. Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi. Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);
xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

26. Defendant's violations of the regulations were not inadvertent or harmless.

27. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

28. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

6

29. In Texas, for disability insurance policies, certificates or riders offered, issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses" are prohibited under 1701.062(a) Texas Insurance Code.

30. Further, for disability insurance policies issued prior to February 1, 2011 that do not contain a renewal date, said discretionary clause prohibition applies after June 1, 2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

31. Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

32. Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the "interpretation of plan language" and "factual determinations" are to be reviewed by the court under a de novo standard.  Therefore, pursuant to *Ariana*, the court should review this matter de novo.

33. ERISA does not preempt state bans on discretionary clauses because of the "savings clause."  ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan."  The "savings clause," however, preserves "any law … which regulates insurance…".  To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured."  *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34. Defendant's discretionary ban is therefore not preempted by ERISA and the Standard of Review for the Court in reviewing this action is de novo.

## ADMINISTRATIVE APPEAL

35. Plaintiff died July 14, 2021.

36. Plaintiff was a 46-year-old woman previously employed by MIRANDCS, Inc. as a "Director of Financial Responsibility."

37. Director of Financial Responsibility is classified under the Dictionary of Occupational Titles as having a Sedentary exertional level. This occupation also has an SVP of 8 and is highly skilled work.

38. This occupation was very demanding in that it required Plaintiff to be responsible for the company's long-term financial health and growth and establish strategies that will earn profits, oversee accounting operations, produce accurate reports on where money is going within the business and improve or change current practices to increase efficiency.

39. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on December 13, 2019.

40. Plaintiff alleged that she became disabled on December 16, 2019.

41. Plaintiff filed for short term disability benefits with Defendant.

42. Short term disability benefits were denied.

43. The Plan defines "Disability" or "Disabled" as follows:

*"Disability" or "Disabled" means Total Disability or Partial Disability. "Total Disability" or "Totally Disabled" means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational*

*license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.*

44. The Plan defines "Own Occupation" or "Regular Occupation" as follows:

*"Own Occupation" or "Regular Occupation means the occupation, trade or profession: (1) in which the Insured Person was employed with the Employer prior to Disability; and (2) which was his or her main source of earned income prior to Disability. It means a collective description of related jobs, as defined by the U.S. Department of Labor of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of: (1) whether such work is with the Employer, with some other firm, or on a self-employed basis; or (2) whether a suitable opening is currently available with the Employer or in the local labor market.*

45. The Plan defines "Any Occupation" as follows:

*"Any Occupation" means any occupation in the competitive workforce paying a gainful wage that You could perform considering your age, education, past work experience, and stage in life.*

46. Long Term Disability benefits were denied.

47. The Plan provides for monthly benefits of $5,500.00.

48. On March 5, 2020, Defendant denied Plaintiff's short term disability benefits.

49. Defendant's denial letter said "the file did not include any examination and/or cognitive testing finding the support she was unable to work." under the Own Occupation definition and allowed Plaintiff 180 days to appeal this decision.

50. Defendant's denial letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

51. Defendant's denial letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal. On this front, Defendant's

9

letter states only that, "If there is additional information, documents, or records that you believe would impact this benefit decision please submit it to us for consideration."

52.     On November 27, 2020, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

53.     Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

54.     Plaintiff submitted additional information including medical records to show that she was totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

55.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

56.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

57.     On or about September 22, 2020, Defendant's internal consultant, Tracie Grumet, MA, CRC, vocational rehabilitation consultant, performed a paper review of Plaintiff's claim file.

58.     On or about January 5, 2021, Defendant's paid consultant, Judy L. Schmidt, M.D. (Dr. Schmidt), internal medicine, performed a peer review of Plaintiff's

claim file.

59. Defendant's peer review of Plaintiff's file was unreliable and unreasonable as a basis for denial because:

    a. Dr. Schmidt's opinion was infected by conflict and bias;

    b. Dr. Schmidt's conclusions lacked foundation and were conclusory;

    c. Dr. Schmidt failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

    d. Dr. Schmidt lacked appropriate qualifications to comment on Plaintiff's conditions;

    e. Dr. Schmidt never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

    f. Dr. Schmidt failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

    g. Dr. Schmidt failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

    h. Dr. Schmidt based her opinion on a summary reports of other underqualified opinions; and

    i. Dr. Schmidt's conclusions were inconsistent with the weight of the evidence.

60. There is an indication that a "Billiejo M, RN," nurse disability consultant, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

61. There is an indication that a "Lynn S, RN," nurse disability consultant II,

reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

62. There is an indication that a "Tina WG, RN, MSN," nurse disability consultant II, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

63. Defendant's consultants completed their reports without examining Plaintiff.

64. Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for short term disability benefits.

65. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

66. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffered including the effects of Plaintiff's impairments on her ability to engage in work activities.

67. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

68. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

69. More information promotes accurate claims assessment.

70. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

71. Plaintiff exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## **MEDICAL FACTS**

72. Plaintiff suffered from multiple medical conditions resulting in both exertional and nonexertional impairments.

73. Plaintiff suffered from left frontal anaplastic astrocytoma, Grade 3; systemic lupus erythematosus (SLE); a rapidly decline of her neurological condition despite surgery and chemotherapy; numbness; weakness; back pain; and incontinence.

74. Treating physicians documented continued chronic pain, as well as decreased range of motion and weakness.

75. Plaintiff's treating physicians opined that Plaintiff was unable to work.

76. Plaintiff's treating physicians disagreed with Defendant's hired peer reviewers.

77. Plaintiff's multiple disorders resulted in restrictions in activity, severely limited Plaintiff's range of motion, and significantly curtailed her ability to engage in any form of exertional activity.

78. Physicians prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

79. However, Plaintiff continued to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

80. Plaintiff's documented pain was so severe that it impaired her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

81. Plaintiff's medications caused additional side effects in the form of sedation and cognitive difficulties.

82. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

83. As such, Plaintiff remained disabled per the terms of the Plan and sought disability benefits pursuant to said Plan.

84. However, after exhausting her administrative remedies, Defendant persisted in denying Plaintiff her rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

85. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

86. Defendant's determination was influenced by its conflict of interest.

87. Defendant's reviewing experts are not impartial.

88. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

89. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

90. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

91. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

92. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:

## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

93. Plaintiff incorporates those allegations contained in paragraphs 1 through 92 as though set forth at length herein.

94. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

   a. Plaintiff was totally disabled, in that she could not perform the material duties of her own occupation, and she could not perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

   b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff was totally disabled;

   c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

   d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II: ATTORNEY FEES AND COSTS

95. Plaintiff repeats and realleges the allegations of paragraphs 1 through 94 above.

96. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff was forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she was entitled to all past due short term and long term disability benefits yet unpaid;

B. Order Defendant to pay past due short term and long term disability benefits retroactive to December 24, 2019 through July 14, 2021, life insurance benefits, death benefits and/or waiver of premium claims in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

D. For such other relief as may be deemed just and proper by the Court.

Dated:  Houston, Texas
        April 13, 2022

                                        Respectfully submitted,

                                        MARC WHITEHEAD & ASSOCIATES,
                                        ATTORNEYS AT LAW L.L.P.

By:    /s/ Madison Tate Donaldson
Madison Tate Donaldson
   Tex. Bar No. 24105812
   Fed. I.D. No. 3151467
   madison@marcwhitehead.com
Selina Valdez
   Tex. Bar No. 24121872
   Fed. I.D. No. 3633062
   selina@marcwhitehead.com
Marc S. Whitehead
   Tex. Bar No. 00785238
   Fed. I.D. No. 15465
   marc@marcwhitehead.com
J. Anthony Vessel
   Tex. Bar. No. 24084019
   Fed. I.D. No. 1692384
   anthony@marcwhitehead.com
Britney Anne Heath McDonald
   Tex. Bar. No. 24083158
   Fed. I.D. No. 2621983
   britney@marcwhitehead.com

403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
STEPHANIE DARMER